STATE OF MINNESOTA                          DISTRICT COURT

COUNTY OF HENNEPIN                    FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| James Scott,<br><br>          Plaintiff,<br><br>     v.<br><br>3M Company, 3M Occupational Safety LLC,<br>Aearo Holding LLC, Aearo Intermediate<br>LLC, Aearo LLC, and Aearo Technologies<br>LLC<br><br>          Defendants. | Case Type: Product Liability<br><br>Court File No.: |

## SUMMONS

THIS SUMMONS IS DIRECTED TO DEFENDANT 3M COMPANY.

1. **YOU ARE BEING SUED**. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2. **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS**. You must give or mail to the person who signed this Summons **a written response** called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

> ECKLAND & BLANDO LLP
> 800 Lumber Exchange
> 10 South Fifth Street
> Minneapolis, MN 55402

3. **YOU MUST RESPOND TO EACH CLAIM**. The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

**4. YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS**. If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

**5. LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case**.

**6. ALTERNATIVE DISPUTE RESOLUTION**. The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

ECKLAND & BLANDO LLP

Dated: January 15, 2021

The undersigned acknowledges that sanctions may
be imposed under Minn. Stat. § 549.211

Jeff H. Eckland, Esq.

Jeff H. Eckland (#139920)
Vince C. Reuter (#390874)
Jared M. Reams (#397159)
800 Lumber Exchange Building
10 South Fifth Street
Minneapolis, MN 55402
(612) 236-0160

*Counsel for Plaintiff*

2

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                          FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| James Scott,<br><br>      Plaintiff,<br><br>  v.<br><br>3M Company, 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC<br><br>      Defendants. | Case Type: Product Liability<br><br>Court File No.: |

## COMPLAINT

Plaintiff James Scott, as and for his Complaint against Defendants 3M Company, 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC (the "Defendants"), states and alleges as follows:

### PRELIMINARY ALLEGATIONS

1.    Plaintiff commences this product liability action against Defendants for injuries caused by Defendants' design, development, testing, manufacturing, assembling, packaging, labeling, promoting, marketing, distributing, selling and/or supplying of defective dual-ended earplugs (Version 2 CAEv.2) (the "Dual-Ended Earplug(s)") that were used by Plaintiff while engaged in military training and/or while deployed on active military duty. Thousands of civilians and U.S. military personnel, including Plaintiff, now suffer from hearing loss, tinnitus, and/or other severe health concerns caused by Defendants' defective Dual-Ended Earplugs.

2.      Defendants knowingly supplied their defective Dual-Ended Earplugs to civilians and to the United States Military from 2003 to 2015 without disclosing Defendants' knowledge of the dangerous effects that they caused. Nor did Defendants provide adequate warnings or instructions for proper use of the Dual-Ended Earplugs. Defendants knew that the Dual-Ended Earplugs were defective prior to supplying them because Defendants falsified test results and misrepresented performance specifications in order to qualify for a multi-million dollar per year government contract with the United States. Fraudulent misrepresentations like those made by Defendants were alleged by the U.S. Department of Justice in a civil action brought against Defendant 3M pursuant to the *qui tam* provisions of the False Claims Act. Upon information and belief, Defendants have not recalled the Dual-Ended Earplugs and they continue to threaten the health and well-being of civilians and U.S. military personnel who wear them and trust that they protect their hearing.

3.      Plaintiff seeks to recover in this civil action the damages that Plaintiff suffered and continues to suffer as a result of Plaintiff's use of Defendants' defective Dual-Ended Earplugs.

**PARTIES**

4.      Plaintiff is a resident of California and served in the United States Marine Corps during a time period between the years 2003 to 2015.

5.      Defendant 3M Company ("3M") is a Delaware corporation with its principal place of business in Minnesota.

6.      Defendant 3M Occupational Safety LLC is a Delaware limited liability company with its principal place of business in Minnesota. Defendant 3M Occupational Safety LLC is a wholly owned subsidiary of Defendant 3M.

2

7.      Defendant Aearo Holding LLC is a Delaware limited liability company with its principal place of business in Minnesota. Defendant Aearo Holding LLC is a subsidiary of Defendant 3M.

8.      Defendant Aearo Intermediate LLC is a Delaware limited liability company with its principal place of business in Indiana. Defendant Aearo Intermediate LLC is a subsidiary of Defendant 3M.

9.      Defendant Aearo LLC is a Delaware limited liability company with its principal place of business in Indiana. Defendant Aearo LLC is a subsidiary of Defendant 3M.

10.     Defendant Aearo Technologies LLC is a Delaware limited liability company with its principal place of business in Indiana. Defendant Aearo Technologies LLC is a subsidiary of Defendant 3M. Defendant Aearo Technologies LLC also operated under the assumed names of "Aearo Company" and "Aearo Technologies."

11.     Defendants 3M and/or 3M Occupational Safety LLC acquired Defendants Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC (the "Aearo Companies") on or about November 15, 2007.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this civil action pursuant to Minn. Stat. §§ 8.31 and 484.01(1). Personal jurisdiction over Defendants is proper because Defendants have their principal place of business in Minnesota or because they have purposefully availed themselves of the privilege of conducting activities within Minnesota and maintain regular and continuous business contacts within Minnesota.

13.     Venue is proper in this Court pursuant to Minn. Stat. §§ 542.01 and 542.09 because one or more Defendants reside in Hennepin County in that they have their resident agent, an office,

3

and a place of business in Hennepin County. Defendant 3M did business in Hennepin County through its design, development, testing, assembling, manufacturing, packaging, promoting, marketing, distribution, and/or selling of the defective Dual-Ended Earplugs.

## FACTUAL ALLEGATIONS

### *The Dual-Ended Earplugs*

14.     The Dual-Ended Earplug is a one-sized, dual-ended, triple-flanged earplug that Defendants created, manufactured, constructed, assembled, designed, tested, promoted, advertised, marketed, distributed, and/or sold to civilians and to the United States military from approximately 2003 to 2015.

15.     One end of the Dual-Ended Earplug is the color olive and the other end is the color yellow. Each end of the Dual-Ended Earplug incorporates a single-ended, triple-flanged earplug called the "Ultrafit" earplug, which Defendants also designed.

16.     Defendants patented this "multi flanged earplug" design on September 19, 1989 as provided in U.S. Patent No. 4,867,149.

17.     Although both ends of the Dual-Ended Earplug use the same Ultrafit earplug, Defendants designed each end to serve a different purpose. Defendants designed the olive-colored end to block as much sound as possible, just like the single-ended Ultrafit earplug initially designed by Defendants.

18.     Defendants referred to the olive-colored end of the Dual-Ended Earplug as the "closed," "blocked," or "linear" end.

19.     Unlike the olive-colored end, the yellow-colored end of the Dual-Ended Earplug is attached to a non-linear filter, which provides level-dependent hearing protection so that users can

4

hear low-level sounds (*e.g.*, close-range conversation), while also blocking loud impulse sounds (*e.g.*, noises from industrial machines).

20.     Defendants referred to the yellow-colored end of the Dual-Ended Earplug as the "open," "unblocked," or "non-linear" end.

### *Civilian and Military Use*

21.     Beginning in or before 2003, Defendants placed the Dual-Ended Earplugs into the commercial market. In turn, because of the design, the United States Military assigned the Dual-Ended Earplugs a national stock number and began purchasing the Dual-Ended Earplugs in 2003.

22.     Defendants directly and/or indirectly supplied the Dual-Ended Earplugs to military personnel and civilians, including Plaintiff, from at least 2003 to 2015, regardless of whether they would be used during wartime, combat, or other military-related exigencies.

23.     The part number and/or SKU of the devices was 370-1011.

24.     Civilians and military personnel, including Plaintiff, relied on Defendants' representations when they used the Dual-Ended Earplugs. This included Defendants' representations that the Dual-Ended Earplugs were safe, effective, and that they provided two different options for adequate hearing attenuation and/or protection depending on which end of the device the user inserted into his or her ear.

25.     In addition to selling the Dual-Ended Earplugs to civilians and the United States military, Defendants marketed, distributed, and/or sold the Dual-Ended Earplugs commercially under different product names.

26.     For example, the Dual-Ended Earplugs are structurally and technologically identical to Defendants' "ARC" earplugs. A cosmetic distinction between these earplugs is that the ARC is colored yellow and red instead of yellow and olive.

5

27.     Defendants initially marketed and sold the ARC earplugs to civilians. For example, Defendants marketed and sold the ARC earplugs to electrical linemen, who frequently encountered potential hazards from electric arcs.

28.     Because the Dual-Ended Earplugs and the ARC earplugs are structurally and technologically identical, Defendants did not design or develop the Dual-Ended Earplugs for exclusive military use.

29.     Defendants designed and developed the Dual-Ended Earplugs for a wide variety of potential users.

### Defendants' Failure to Properly
### Test the Dual-Ended Earplugs

30.     Federal and industry regulations required Defendants to test the safety and efficacy of the Dual-Ended Earplugs before distributing, supplying, and/or selling them to consumers.

31.     Specifically, Environmental Protection Agency ("EPA") regulations, codified in 30 CFR 211.201 et seq., and the Noise Control Act, 42 U.S.C. § 4901 et seq., regulate labeling and testing of hearing protection devices.

32.     Hearing protection devices, like the Dual-Ended Earplugs, are classified by their potential to reduce noise in decibels ("dB"), which is a term used to categorize the power or density of sound.

33.     Hearing protection devices must be tested pursuant to guidelines and procedures promulgated by the American National Standards Institute ("ANSI").

34.     These guidelines require manufacturers of hearing protection devices to test for, and label their devices with, a Noise Reduction Rating ("NRR").

35.     An NRR is a unit of measurement used to determine the effectiveness of hearing protection devices in decreasing sound exposure in certain environments.

36.     The noise measurement procedure published by ANSI, also known as ANSI S3.19-1974, governs the NRR labeling and testing of hearing protection devices.

37.     The higher the NRR number associated with a hearing protection device, the greater the potential for noise reduction in certain environments.

38.     The EPA requires manufacturers of hearing protection devices to provide accurate NRRs on the labels of their devices.

39.     Instead of hiring an independent laboratory to test the NRRs of their hearing protection devices, Defendants regularly used their own EARCAL laboratory for that purpose since at least December 1999.

40.     Unlike independent laboratories, the EARCAL laboratory used improper testing procedures that substantially skewed the results of the NRR labeling tests that Defendants performed on their own hearing protection devices.

41.     For example, Defendants manipulated the Dual-Ended Earplug by folding back a flange to create a tighter fit but failed to disclose this manipulation in the context of Defendants' standard fitting procedures.

42.     Through Defendants' improper testing procedures that produced skewed and unreliable results, Defendants nonetheless discovered, in or around 2000, that the Dual-Ended Earplugs were susceptible to imperceptible loosening that would allow harmful sounds to enter the user's ear canal and damage the user's hearing.

43.     Defendants ignored this finding in favor of other unreliable, biased, or manipulated information obtained during testing and inflated the NRR that Defendants placed on the packaging when it began supplying the Dual-Ended Earplugs to civilians and military personnel, including Plaintiff.

7

44.     Defendants knew in 2000 that the design of the Dual-Ended Earplugs prevented a proper fit and seal when inserting either end of the device into the user's ear canal according to the provided standard fitting procedures.

45.     After discovering that their Dual-Ended Earplugs were susceptible to imperceptible loosening that would allow harmful sounds to enter the user's ear canal and damage the user's hearing, Defendants failed to warn civilians or military users, including Plaintiff, of this danger.

46.     Defendants also failed to instruct civilians or military users, including Plaintiff, that folding back certain flanges may improve the hearing protection provided by the Dual-Ended Earplugs.

47.     By fabricating the NRR for the Dual-Ended Earplugs in the face of contradictory NRR data, Defendants intentionally misstated the amount of protection provided by each end of the device.

48.     For example, although the open end of the Dual-Ended Earplugs provides little to no protection when used according to standard fitting procedures, Defendants misrepresented to Plaintiffs and the United States military that the open mode "allow[s] situational awareness yet protect[s] against dangerous peak levels with a filter element that reacts instantaneously to provide increased protection."

49.     Defendants' labeling, packaging, and/or marketing of the Dual-Ended Earplugs are, at best, misleading and have caused thousands of innocent users, including Plaintiff, to suffer hearing loss and tinnitus.

50.     Further, Defendants' testing, labeling, and/or marketing of the Dual-Ended Earplugs violated EPA regulations, 40 CFR § 211.204-04 et seq., the Noise Control Act, 42 U.S.C. § 4901 et seq., and ANSI S3.19-1974.

*Scientific Misrepresentations*

51.     In addition to Defendants' sheltering the defects of the Dual-Ended Earplugs, misrepresenting the NRR for both ends of the earplug, and failing to warn or provide proper instructions for using the earplugs in civilian and military contexts, Defendants also distorted scientific sources when marketing, advertising, and/or promoting the Dual-Ended Earplugs to Plaintiff and the United States military.

52.     Citing the 1998 Blast Overpressure Study by Daniel Johnson, for example, Defendants' marketing brochures declared that "[t]he level-dependent technology used in the [Dual-Ended Earplugs] has been tested on human subjects and found to be protective at 190 dBP for at least 100 exposures (sufficient to cover the loudest weapons in the military inventory, including shoulder-fired rockets)."

53.     Given Defendants' gloss on the Johnson study, customers believed that the Dual-Ended Earplugs were "protective at 190 dBP for at least 100 exposures" of the "loudest weapons in the military inventory."

54.     Although Defendants repeatedly cited the Johnson study from 2003 to 2015 when marketing, advertising, and/or promoting the Dual-Ended Earplugs, the Johnson study does not actually show that the Dual-Ended Earplugs are "protective at 190 dBP for at least 100 exposures."

55.     Defendants knew that the Johnson study did not actually show that the Dual-Ended Earplugs are "protective at 190 dBP for at least 100 exposures" when they made that representation.

56.     Even though Defendants knew that the 1998 Johnson study did not support their claim that the Dual-Ended Earplugs were "protective at dBP for at least 100 exposures,"

Defendants continued to knowingly market, advertise, and/or promote the product to the public based on that false statement.

57.     Defendants did so despite acknowledging in their public press releases that "[t]innitus, often referred to as 'ringing in the ears,' and noise-induced hearing loss can be caused by a one-time exposure to hazardous impulse noise, or by repeated exposure to excessive noise over an extended period of time."

### *Fraudulent Concealment*

58.     At all times material hereto, Defendants committed a continuing fraud in obfuscating and failing to disclose facts that were known to them relating to their fraudulent testing of the Dual-Ended Earplugs and defective design of the product—facts that were not discovered and could not have been discovered by any person, including Plaintiff, while undertaking reasonable due diligence.

59.     Plaintiff did not and could not have discovered with reasonable diligence the veritable facts regarding Defendants' misrepresentations, omissions, faulty testing, and/or the defective design of the Dual-Ended Earplugs.

60.     Nor could Plaintiff have discovered that Defendants' Dual-Ended Earplugs caused Plaintiff's hearing-related injuries and/or sequelae thereto because the earplugs imperceptibly loosened, as Defendants knew all along.

61.     Defendants are jointly and severally liable to Plaintiff for their individual and collective tortious acts.

10

## CAUSES OF ACTION

### COUNT I
### (STRICT LIABILITY)

#### *Failure to Warn and Use Defectiveness*

62.     Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth herein.

63.     Defendants had a duty to provide proper fitting instructions and warn Plaintiff about the defects and the dangers associated with using the Dual-Ended Earplugs, of which they knew, or in the exercise of ordinary care, should have known, from the time that the Dual-Ended Earplugs left Defendants' control up until, and at all times during, the Plaintiff's use thereof.

64.     At the time Defendants tested, designed, manufactured, configured, assembled, marketed, advertised, sold for consideration, and/or provided the Dual-Ended Earplugs, and at all times until the date of Plaintiff's injuries, the Dual-Ended Earplugs contained defects and risks capable of causing hearing injuries. These defects and risks were known or, through the use of scientific knowledge then available, knowable to Defendants.

65.     At all times herein mentioned, said risks and defects presented a substantial danger of serious injury to Plaintiff as a user of the Dual-Ended Earplugs.

66.     Defendants breached their duty by failing to warn Plaintiff of these dangers and by failing to provide adequate instructions for use.

67.     The Dual-Ended Earplugs that were used by Plaintiff were defective when they left the control of Defendants.

68.     At all relevant times, the substantial dangers involved in the reasonably foreseeable uses of the Dual-Ended Earplugs (which were made dangerous by their defective design and lack of sufficient warnings) caused the Dual-Ended Earplugs to have an unreasonably dangerous

11

propensity to cause hearing loss and other injuries, including tinnitus, and that was known or knowable to Defendants.

69.     The warnings accompanying the Dual-Ended Earplugs did not adequately warn and instruct Plaintiff, in light of the risks known or knowable to Defendants, of the dangers associated with the Dual-Ended Earplugs, including, but not limited to, Defendants' failure to provide adequate instructions for use or the dangers of hearing injuries.

70.     The warnings accompanying the Dual-Ended Earplugs failed to provide the level of information that the consuming public, whether the consumer is a civilian or a military servicemember, including Plaintiff, would expect when using the product in a manner reasonably foreseeable to Defendants. Defendants either recklessly or intentionally hid, minimized, and/or downplayed the risks related to the Dual-Ended Earplugs, including but not limited to, the risk of the Dual-Ended Earplugs to imperceptibly loosen in the wearer's ear, and the lack of effectiveness when the opposing flanges of the Dual-Ended Earplugs were not rolled back.

71.     Defendants failed and continue to fail to provide adequate warnings, instructions, guidelines, and/or admonitions to members of the consuming public, whether the consumer was or is a civilian or a military servicemember, including Plaintiff, of the design defects that existed in the Dual-Ended Earplugs and which were known or knowable to Defendants.

72.     Defendants know that these substantial dangers were and remain not readily recognizable to an ordinary consumer, whether that consumer was or is a civilian or a military servicemember, including Plaintiff, and that consumers would utilize the Dual-Ended Earplugs without inspection.

73.     Defendants' failure to warn of these substantial dangers rendered the Dual-Ended Earplugs unreasonably dangerous to Plaintiff.

74.     If Defendants had given or currently gave adequate instructions and warnings regarding the Dual-Ended Earplugs, these instructions and warnings could have reduced and would continue to reduce the risk of harm to members of the consuming public, whether the consumer is a civilian or a military servicemember, including Plaintiff.

75.     At the time of Plaintiff's injury, Plaintiff was using the Dual-Ended Earplugs in a manner that was reasonably foreseeable to Defendants.

76.     Plaintiff would have complied with alternative instructions for use of the Dual-Ended Earplugs had Defendants provided Plaintiff with such alternative instructions.

### *Design Defect*

77.     At all relevant times herein mentioned, Defendants tested, designed, fabricated, manufactured, distributed, and/or marketed the Dual-Ended Earplugs to civilians and the United States Military, including Plaintiff.

78.     At all relevant times herein mentioned, the Dual-Ended Earplugs were in substantially the same condition as when they left Defendants' possession.

79.     At all relevant times herein mentioned, the Dual-Ended Earplugs were defective in their design in that, among other things, they would not, could not, and did not perform in a manner as safely as an ordinary consumer would expect. For example, the Dual-Ended Earplugs were defectively designed with too short a stem that caused the earplugs to imperceptibly loosen in the wearer's ear.

80.     At all relevant times herein mentioned, the Dual-Ended Earplugs were further defective in design because the benefits of their design were outweighed by the risks they posed to consumers, such as Plaintiff, when used in a foreseeable manner and because the defective design rendered the Dual-Ended Earplugs unreasonably dangerous to users such as Plaintiff.

13

81.     At all relevant times herein mentioned, the Dual-Ended Earplugs were further defective in design because they failed to comply with the safety specifications mandated by law, regulation, or other obligation for the safety of Plaintiff and other consumers.

82.     At all relevant times herein mentioned, the Dual-Ended Earplugs were further defective in design because a reasonable alternative design existed that would have reduced the risk posed by the Dual-Ended Earplugs.

83.     At all relevant times, the Dual-Ended Earplugs were used in a manner that was foreseeable and intended by Defendants.

84.     As a direct and proximate result of Defendants' acts and conduct, Plaintiff suffered serious injuries, including but not limited to hearing loss and/or tinnitus.

85.     As a direct and proximate result of Defendants' acts and conduct, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses. Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

## COUNT II
### (NEGLIGENCE)

86.     Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth herein.

87.     Defendants each had a duty to use their professional expertise and exercise that degree of skill and learning ordinarily used under the same or similar business by a person or entity in Defendants' business of designing, developing, testing, manufacturing, marketing, and/or distributing hearing protection devices.

88.     Defendants breached their respective duties by failing to exercise the required degree of care in designing, developing, testing, manufacturing, marketing, and/or distributing

hearing protection devices in a manner designed to provide the specified level of hearing protection.

89.     Plaintiff was damaged by Defendants' conduct, including but not limited to damage to Plaintiff's hearing.

90.     The damages suffered by Plaintiff were or should have been reasonably foreseeable to Defendants.

91.     Defendants' breaches are a direct and proximate cause of the injuries and damages suffered by Plaintiff in an amount not yet fully determined, but in excess of $50,000. Plaintiff is entitled to recover damages and other relief as available, at law or equity, as a direct and proximate result of Defendants' conduct.

## COUNT III
### (NEGLIGENCE *PER SE*)

92.     Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth herein.

93.     Defendants, through their testing, distributing, designing, marketing, and/or labeling of the Dual-Ended Earplugs, violated federal regulations and statutes including, but not limited to, the False Claims Act, 31 U.S.C. § 3729, *et seq.,* the Noise Control Act, 42 U.S.C. § 4901, *et seq.,* 40 C.F.R. § 211.204-4(e), and 40 C.F.R. § 211.206-1 of the EPA regulations.

94.     Defendants also violated the ANSI S3.19-1974 testing protocol, federal specifications governing the product, and all applicable consumer protection statutes.

95.     Defendants' violations of these state and federal laws and regulations constitute the direct and proximate cause of Plaintiff's injuries.

15

96.     Plaintiff is within the class of persons that these statutes and regulations are designed to protect, and Plaintiff's injuries comprise the type of harm that the statutes and regulations are designed to prevent.

97.     Defendants' actions also breached their parallel common law duties to provide safe products, to advertise honestly, and to provide reasonable assurances with respect to the safety and effectiveness of the Dual-Ended Earplugs for the purposes that Defendants advertised.

98.     Defendants' violations of the aforementioned laws, statutes, and regulations constitute a breach of duty subjecting Defendants to civil liability for all damages arising therefrom, under theories of negligence *per se*.

99.     As a direct and proximate result of Defendants' statutory and regulatory violations, Plaintiff suffered serious injuries, including but not limited to hearing loss and/or tinnitus.

100.    As a direct and proximate result of Defendants' statutory and regulatory violations, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses. Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

## COUNT IV
## (BREACH OF EXPRESS WARRANTY)

101.    Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth herein.

102.    At all times material hereto, Defendants expressly warranted by way of written literature including, but not limited to, product labeling, articles, advertising, certifications, promotional materials, and/or other documents that the Dual-Ended Earplugs were safe, effective, fit, and proper for their intended use or foreseeable uses and conformed to federal regulations and specifications.

16

103.    Plaintiff utilized Defendants' Dual-Ended Earplugs, and complied with any and all provided instructions for use, all for the purpose of protecting against loud sounds that could cause damage to Plaintiff's hearing. In so doing, Plaintiff relied upon the skill, judgment, representation, and the foregoing written warranties of Defendants. Said warranties and representations were false, misleading and inaccurate in that the Dual-Ended Earplugs were not in compliance with federal regulations and/or did not conform to or perform in accordance with approved specifications and malfunctioned during use and were therefore not safe and effective and were unfit for the uses for which they were intended or put with the knowledge and/or encouragement and/or approval of Defendants.

104.    Apart from any other misrepresentations alleged above, certain representations included with the Dual-Ended Earplugs state that the closed end provides a "22" NRR and the open end provides an "O" NRR, but nowhere do they state that this protection cannot be consistently achieved unless the user folds back certain flanges.

105.    As a direct and proximate result of Defendants' acts and conduct, Plaintiff suffered serious injuries, including but not limited to hearing loss and/or tinnitus.

106.    As a direct and proximate result of Defendants' acts and conduct, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses. Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

## COUNT V
## (BREACH OF IMPLIED WARRANTY)

107.    Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth herein.

108.    Before, during, and after the time that the Dual-Ended Earplugs were used by Plaintiff, Defendants impliedly warranted to Plaintiff that the Dual-Ended Earplugs were of merchantable quality, were manufactured, labeled, and/or packaged in accordance with federal regulations, complied with applicable federal regulations and approved specifications, and were safe, effective and fit for the use for which they were intended and/or for other known or foreseeable uses.

109.    Plaintiff was unskilled in the research, design, and manufacture of the Dual-Ended Earplugs and reasonably relied entirely upon Defendants' skill, judgment, and implied warranties, including any and all provided instructions, in utilizing the Dual-Ended Earplugs.

110.    Defendants' Dual-Ended Earplugs were not manufactured, packaged, and/or labeled in accordance with federal laws and regulations, did not conform to or perform in accordance with approved specifications and were therefore neither safe nor effective for their intended, known or foreseeable uses, nor of merchantable quality, as warranted by Defendants, in that they had the potential to malfunction and cause hearing injuries when put to their intended, known, or foreseeable uses.

111.    As a direct and proximate result of Defendants' acts and conduct, Plaintiff suffered serious injuries, including but not limited to hearing loss and/or tinnitus.

112.    As a direct and proximate result of Defendants' acts and conduct, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses. Plaintiff may also require additional medical and/or hospital care, attention, and services in the future.

## COUNT VI
## (NEGLIGENT MISREPRESENTATION)

113.   Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth herein.

114.   Defendants made negligent misrepresentations with respect to the Dual-Ended Earplugs including, but not limited to, the following:

A.   Defendants misrepresented, through oral representations, labeling, advertising, marketing materials, and/or publications, that the Dual-Ended Earplugs had been tested and found to constitute safe and effective protection against loud impulse noises when users complied with standard instructions for use provided by Defendants;

B.   Defendants misrepresented, through oral representations, labeling, advertising, marketing materials, and/or publications, that an NRR 22 for closed end and an NRR of 0 for open end could be consistently achieved without wearers folding back each earplug's opposing side's flanges before inserting the Dual-Ended Earplugs;

C.   Defendants misrepresented, through oral representations, labeling, advertising, marketing materials, and/or publications, that the Dual-Ended Earplugs would not imperceptibly become loose, and thus less effective, after insertion; and

D.   Defendants misrepresented, through oral representations, labeling, advertising, marketing materials, and/or publications, that the Dual-Ended Earplugs conformed to best manufacturing practices, U.S. military specifications, and federal regulations governing hearing attenuation devices.

115.   Defendants did not exercise reasonable care or competence in obtaining or communicating information to the public regarding the characteristics and qualities of the Dual-Ended Earplugs.

116.   Plaintiff reasonably relied upon Defendants' misrepresentations regarding the Dual-Ended Earplugs.

19

117.    As a direct and proximate result of Defendants' acts and conduct, Plaintiff suffered serious injuries, including but not limited to hearing loss and/or tinnitus.

118.    As a direct and proximate result of Defendants' acts and conduct, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses. Plaintiff may also require additional medical and/or hospital care, attention, and services in the future.

**COUNT VII**
**(FRAUDULENT MISREPRESENTATION)**

119.    Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth herein.

120.    Defendants made fraudulent misrepresentations with respect to the Dual-Ended Earplugs including, but not limited to, the following:

A.    Defendants misrepresented, through oral representations, labeling, advertising, marketing materials, and/or publications, that the Dual-Ended Earplugs had been tested and found to constitute safe and effective protection against loud impulse noises when users complied with standard instructions for use provided by Defendants;

B.    Defendants misrepresented, through oral representations, labeling, advertising, marketing materials, and/or publications that an NRR 22 for closed end and an NRR of 0 for open end could be consistently achieved without wearers folding back each earplug's opposing side's flanges before inserting the Dual-Ended Earplugs;

C.    Defendants misrepresented, through oral representations, labeling, advertising, marketing materials, and/or publications, that Dual-Ended Earplugs would not imperceptibly become loose, and thus less effective, after insertion; and

D.    Defendants misrepresented, through oral representations, labeling, advertising, marketing materials, and publications that the Dual-Ended Earplugs conformed to best manufacturing practices, U.S. military specifications, and federal regulations governing hearing attenuation devices.

20

121.    Defendants knew that their misrepresentations were false, yet they willfully, wantonly, and recklessly disregarded their obligation to provide truthful representations regarding the safety and risks of the Dual-Ended Earplugs to consumers and end users, including Plaintiff.

122.    Defendants made their misrepresentations with the intent that consumers and end users, including Plaintiff, would rely upon them.

123.    Defendants' misrepresentations were made with the intent of defrauding and deceiving consumers and end users, including Plaintiff, to induce and encourage use and sale of the Dual-Ended Earplugs.

124.    Plaintiff relied upon Defendants' representations and, in the absence of Defendants' representations, Plaintiff would not have used the Dual-Ended Earplugs in the manner in which Plaintiff used them.

125.    Defendants' fraudulent representations evidence their callous, reckless, and willful indifference to the health, safety, and welfare of consumers and end users, including Plaintiff.

126.    Defendants committed their conduct with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life or safety and the rights and, specifically, the safety of consumers and end users such as Plaintiff.

127.    As a direct and proximate result of Defendants' acts and conduct, Plaintiff suffered serious injuries, including but not limited to hearing loss and/or tinnitus.

128.    As a direct and proximate result of Defendants' acts and conduct, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses. Plaintiff may also require additional medical and/or hospital care, attention, and services in the future.

## COUNT VIII
## (FRAUDULENT CONCEALMENT)

129.    Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth herein.

130.    Defendants fraudulently concealed information with respect to the Dual-Ended Earplugs including, but not limited to, the following:

A.    Defendants misrepresented, through oral representations, labeling, advertising, marketing materials, and/or publications, that the Dual-Ended Earplugs had been tested and found to constitute safe and effective protection against loud impulse noises when users complied with standard instructions for use provided by Defendants;

B.    Defendants misrepresented, through oral representations, labeling, advertising, marketing materials, and/or publications, that an NRR 22 for closed end and an NRR of 0 for open end could be consistently achieved without wearers folding back each earplug's opposing side's flanges before inserting the Dual-Ended Earplugs;

C.    Defendants misrepresented, through oral representations, labeling, advertising, marketing materials, and/or publications, that the Dual-Ended Earplugs would not imperceptibly become loose, and thus less effective, after insertion; and

D.    Defendants misrepresented, through oral representations, labeling, advertising, marketing materials, and/or publications, that the Dual-Ended Earplugs conformed to best manufacturing practices, U.S. military specifications, and federal regulations governing hearing attenuation devices.

131.    Defendants had sole access to material facts regarding the dangers and unreasonable risks of the Dual-Ended Earplugs.

132.    Defendants intentionally concealed information regarding the risks of the Dual-Ended Earplugs and Defendants knew that their representations were false upon this concealment.

133.     Defendants intentionally concealed information regarding the risks of the Dual-Ended Earplugs with the intent that consumers and end users, including Plaintiff, would rely upon Defendants' misrepresentations and omissions regarding material facts.

134.     Plaintiff relied upon Defendants' representations and Plaintiff was unaware of the substantial risks of the Dual-Ended Earplugs because Defendants concealed these material facts from consumers and end users, including Plaintiff.

135.     Defendants committed their conduct with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life or safety and, specifically, the rights and safety of consumers and end users such as Plaintiff.

136.     As a direct and proximate result of Defendants' acts and conduct, Plaintiff suffered serious injuries including, but not limited to, hearing loss and/or tinnitus.

137.     As a direct and proximate result of Defendants' acts and conduct, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses. Plaintiff may also require additional medical and/or hospital care, attention, and services in the future.

## COUNT IX
## (PREVENTION OF CONSUMER FRAUD)
### (Minn. Stat. § 325F.68 *et seq.*)

138.     Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth herein.

139.     Minnesota's Prevention of Consumer Fraud statute prohibits parties from engaging in any "fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged."

140.    The Dual-Ended Earplugs fall within the definition of "merchandise" under the subject Minnesota statute.

141.    Defendants each fall within the definition of "person" under the subject Minnesota statute.

142.    Defendants have advertised and sold the Dual-Ended Earplugs under the subject Minnesota statute.

143.    Defendants committed repeated and willful, unfair, or deceptive acts or practices, and unconscionable trade practices, in connection with the sale, marketing, and/or distribution of their Dual-Ended Earplugs.

144.    Defendants' unfair, deceptive, and unconscionable representations, concealments, and omissions were reasonably calculated to deceive consumers and end users, including Plaintiff.

145.    Defendant's misrepresentations, concealments, and omissions constitute a willful course of conduct which continues to this day.

146.    Defendants misrepresented, through their labeling, advertising, marketing materials, and/or publications, that the Dual-Ended Earplugs had been tested and found to constitute safe and effective protection against loud impulse noises when users complied with standard instructions for use provided by Defendants.

147.    Defendants misrepresented, through their labeling, advertising, marketing materials, and/or publications, that an NRR "22" for closed end and an NRR of "0" for open end could be consistently achieved without wearers folding back the flanges on the opposing end of each earplug.

24

148.    Defendants misrepresented, through their labeling, advertising, marketing materials, and/or publications, that their Dual-Ended Earplugs would not imperceptibly become loose in the user's ear subsequent to insertion, rendering the earplugs less effective or ineffective.

149.    Defendants misrepresented, through their labeling, advertising, marketing materials, and/or publications, that their Dual-Ended Earplugs conformed to best manufacturing practices, U.S. military specifications, and federal regulations governing hearing attenuation devices.

150.    Defendants also omitted material facts, causing confusion or misunderstanding as to approval or certification of goods or services.

151.    Defendants failed to disclose the material facts that, for example, the Dual-Ended Earplugs were not in compliance with best practices, laws, specifications, and regulations. But for these material factual omissions, Defendants would not have been able to sell the Dual-Ended Earplugs as they were manufactured.

152.    Defendants wrongfully represented that the Dual-Ended Earplugs they manufactured, marketed, and/or sold possessed characteristics, uses, or benefits that they do not in fact possess.

153.    Defendants also wrongfully misrepresented that the Dual-Ended Earplugs were safe and effective when in fact such representations were untrue, false, and misleading.

154.    Defendants also exaggerated and introduced ambiguity as to material facts and omitted material facts regarding the Dual-Ended Earplugs with the intent to deceive.

155.    Because of the Dual-Ended Earplugs' defects, which Defendants concealed and misrepresented, the Dual-Ended Earplugs lacked hearing attenuation value and in fact caused

hearing injuries. Therefore, Defendants' sales and marketing of the Dual-Ended Earplugs constituted a violation of the subject Minnesota statute.

156.    Defendants also failed to correct prior misrepresentations and omissions about the risks and true hearing attenuation value of the Dual-Ended Earplugs as provided in Defendants' standard instructions for use. Defendants' omissions rendered deceptive even their seemingly truthful statements about the Dual-Ended Earplugs.

157.    All Defendants' actions of fraud, false pretenses, false promises, misrepresentations, misleading statements, and deceptive practices discussed herein, were made with the intent that consumers, whether civilian or military servicemembers, including Plaintiff, would rely upon them.

158.    The damages which Plaintiff seeks to recover were sustained as a direct and proximate cause of Defendants' intentional actions and omissions.

159.    Because of Defendants' omissions and deceptive misrepresentations, Plaintiff has incurred significant damages, including, but not limited to, those alleged throughout this Complaint, which are expressly incorporated herein by reference.

160.    Plaintiff seeks injunctive relief and actual damages under Minn. Stat. § 8.31, which creates a private right of action when the action would benefit the public. The present action benefits the public in Plaintiff's community, the State of Minnesota, and the United States. In addition to placing thousands of civilians and military servicemembers, including thousands of Minnesotans, at risk of suffering hearing damage and other impairment, Defendants' fraud has led to enormous costs to Minnesotans because of the U.S. military's repeated purchases of the defective earplugs and because of the enormous medical costs associated with treating military servicemembers. Moreover, because the Dual-Ended Earplugs were not recalled and continue to

be sold by others, these costs are continuing. Defendants' conduct was directed towards increasing profits at the expense of consumer health and safety, including U.S. military servicemembers. A significant public interest exists in ensuring that Defendants adhere to statutes designed to protect consumers. Plaintiff seeks monetary and injunctive relief to stop further misrepresentations by Defendants that have caused, and are continuing to cause, significant injuries such as hearing loss and/or tinnitus.

**COUNT X**
**(UNLAWFUL TRADE PRACTICES)**
**(Minn. Stat. § 325D.09 *et seq.*)**

161.   Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth herein.

162.   Minnesota's Unlawful Trade Practices statute provides that "[n]o person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

163.   Defendants each fall within the definition of "person" under the subject Minnesota statute.

164.   The Dual-Ended Earplugs are "merchandise" under the subject Minnesota statute.

165.   Defendants misrepresented the true NRR value of the Dual-Ended Earplugs using the provided fitting instructions. Defendants further engaged in an aggressive marketing campaign that sought to promote the Dual-Ended Earplugs as safe, effective, and suitable for consumers and end users, such as Plaintiff, when Defendants knew that this was not the case.

166.   Because of the dangerous nature of the Dual-Ended Earplugs, Defendants' manufacturing, marketing, sales, and/or distribution unlawfully caused hearing injuries to consumers and end users, such as Plaintiff.

27

167.   As alleged herein, Defendants wrongfully represented that the Dual-Ended Earplugs they manufactured, marketed, and sold possessed characteristics, uses, or benefits that they do not in fact possess.

168.   Defendants also wrongfully represented that the Dual-Ended Earplugs were safe and effective using their standard instructions for use, when such representations were untrue, false, and misleading.

169.   Defendants also exaggerated and/or introduced ambiguity as to material facts and omitted material facts, which tended to deceive and/or did in fact deceive.

170.   The dangerous nature of the Dual-Ended Earplugs, which Defendants concealed and misrepresented, caused hearing injuries to thousands of civilians and Military servicemembers, including Plaintiff. Therefore, Defendants' sales and marketing of the Dual-Ended Earplugs violated Minnesota statute.

171.   Defendants also omitted or concealed material facts and failed to correct prior misrepresentations and omissions about the risks and benefits of the Dual-Ended Earplugs when users complied with standard instructions for use provided by Defendants. Defendants' omissions rendered even their seemingly truthful statements about the Dual-Ended Earplugs deceptive.

172.   Because of Defendants' omissions and deceptive misrepresentations to consumers and end users, such as Plaintiff, Plaintiff has incurred significant damages, including, but not limited to, those alleged throughout this Complaint, which are expressly incorporated herein by reference.

173.   Defendants' intentional acts and omissions constitute a direct and proximate cause of the damages that Plaintiff sustained and seeks to recover.

174.   Plaintiff seeks injunctive relief and actual damages under Minn. Stat. § 325D.15.

175.    Plaintiff seeks injunctive relief and actual damages under Minn. Stat. § 8.31, which creates a private right of action when the action would benefit the public. The present action benefits the public in Plaintiff's community, the State of Minnesota, and the United States. In addition to placing thousands of civilians and military servicemembers, including thousands of Minnesotans, at risk of suffering hearing damage and other impairment, Defendants' fraud has led to enormous costs to Minnesotans because of the U.S. military's repeated purchases of the defective earplugs and because of the enormous medical costs associated with treating military servicemembers. Moreover, because the Dual-Ended Earplugs were not recalled and continue to be sold by others, these costs are continuing. Defendants' conduct was directed towards increasing profits at the expense of consumer health and safety, including U.S. military servicemembers. A significant public interest exists in ensuring that Defendants adhere to statutes designed to protect consumers. Plaintiff seeks monetary and injunctive relief to stop further misrepresentations by Defendants that have caused, and are continuing to cause, significant injuries such as hearing loss and/or tinnitus.

**COUNT XI**
**(DECEPTIVE TRADE PRACTICES)**
**(Minn. Stat. § 325D.43 *et seq.*)**

176.    Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth herein.

177.    Minnesota law prohibits deceptive trade practices. Minnesota's Deceptive Trade Practices statute provides that a "person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: . . . (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person

does not have; . . . (7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

178.    Each Defendant constitutes a "person" under the subject Minnesota statute.

179.    The Dual-Ended Earplugs constitute "goods" under the subject Minnesota statute.

180.    Defendants' unfair, deceptive, and unconscionable representations, concealments, and omissions were reasonably calculated to create confusion and misunderstanding as to the nature and efficacy of the Dual-Ended Earplugs, and in doing so deceived consumers and end users, including Plaintiff.

181.    Defendants misrepresented, through their labeling, advertising, marketing materials, and/or publications, that the Dual-Ended Earplugs had been tested and found to constitute safe and effective protection against loud impulse noises when users complied with standard instructions for use provided by Defendants. Specifically, Defendants misrepresented, through their labeling, advertising, marketing materials, and/or publications, that an NRR "22" for closed end and an NRR of "0" for open end could be consistently achieved without users folding back the flanges on the opposing end of each earplug.

182.    Because of the dangerous nature of the Dual-Ended Earplugs, Defendants' testing, designing, labeling, manufacturing, marketing, sales, and/or distribution practices unlawfully caused hearing injuries to thousands of consumers and end users, including Plaintiff.

183.    Defendants wrongfully represented that the Dual-Ended Earplugs they manufactured, marketed, and sold had characteristics, uses, or benefits that they do not have.

184.    Defendants wrongfully represented that the Dual-Ended Earplugs were safe and effective when such representations were untrue, false, and misleading.

185.    Because of the dangerous nature of the Dual-Ended Earplugs, actively concealed and misrepresented by Defendants, the Dual-Ended Earplugs actually lacked hearing attenuation value and in fact caused hearing injuries to thousands of consumers and end users, including Plaintiff. Therefore, Defendants' marketing of the Dual-Ended Earplugs constituted a violation of the subject Minnesota statute.

186.    Defendants also failed to correct prior misrepresentations and omissions about the risks and true hearing attenuation value of the Dual-Ended Earplugs. Defendants' omissions rendered even their seemingly truthful statements about the Dual-Ended Earplugs deceptive.

187.    Defendants repeatedly omitted material information to consumers and end users, including Plaintiff, which has directly led to Plaintiff's hearing injuries.

188.    Defendants also used exaggeration and/or created ambiguity as to material facts and/or omitted material facts, which tended to deceive and/or did in fact deceive.

189.    Defendants also exaggerated and introduced ambiguity as to material facts and omitted material facts regarding the Dual-Ended Earplugs with the intent to deceive and that did in fact deceive.

190.    Because of Defendants' deceptive trade practices, Plaintiff has incurred significant damages including, but not limited to, those alleged throughout this Complaint, which are expressly incorporated herein by reference.

191.    Defendants' intentional acts and omissions constitute a direct and proximate cause of the damages that Plaintiff sustained and seeks to recover.

192.    Plaintiff seeks injunctive relief and actual damages under Minn. Stat. § 325D.45.

193.    Plaintiff seeks injunctive relief and actual damages under Minn. Stat. § 8.31, which creates a private right of action when the action would benefit the public. The present action

benefits the public in Plaintiff's community, the State of Minnesota, and the United States. In addition to placing thousands of civilians and military servicemembers, including thousands of Minnesotans, at risk of suffering hearing damage and other impairment, Defendants' fraud has led to enormous costs to Minnesotans because of the U.S. military's repeated purchases of the defective earplugs and because of the enormous medical costs associated with treating military servicemembers. Moreover, because the Dual-Ended Earplugs were not recalled and continue to be sold by others, these costs are continuing. Defendants' conduct was directed towards increasing profits at the expense of consumer health and safety, including U.S. military servicemembers. A significant public interest exists in ensuring that Defendants adhere to statutes designed to protect consumers. Plaintiff seeks monetary and injunctive relief to stop further misrepresentations by Defendants that have caused, and are continuing to cause, significant injuries such as hearing loss and/or tinnitus.

## COUNT XII
## (FALSE STATEMENT IN ADVERTISEMENT)
### (Minn. Stat. § 325F.67 *et seq.*)

194.    Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth herein.

195.    In pertinent part, Minnesota's False Statement in Advertisement statute provides that: "Any person, firm, corporation, or association who, with intent to sell or in anywise dispose of merchandise, securities, service, or anything offered by such person, firm, corporation, or association, directly or indirectly, to the public, for sale or distribution . . . or to induce the public in any manner to enter into any obligation relating thereto . . . or any interest therein, makes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a

newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price

tag, circular, pamphlet, program, or letter, or over any radio or television station, or in any other

way, an advertisement of any sort regarding merchandise . . . or anything so offered to the public,

for use, consumption, purchase, or sale, which advertisement contains any material assertion,

representation, or statement of fact which is untrue, deceptive, or misleading, shall, whether or not

pecuniary or other specific damage to any person occurs as a direct result thereof, be guilty of a

misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such."

196.    Each Defendant constitutes a "person" under the subject Minnesota statute.

197.    The Dual-Ended Earplugs constitute "merchandise" under the subject Minnesota

statute.

198.    Defendants fraudulently induced consumers into purchasing the Dual-Ended

Earplugs by misrepresenting that the Dual-Ended Earplugs complied with applicable law,

regulations, and specifications. The Dual-Ended Earplugs did not, in fact, comply with said law,

regulations, and specifications.

199.    Defendants misrepresented to consumers, through their labeling, advertising,

marketing materials, and/or publications, that an NRR "22" for closed end and an NRR of "O" for

open end could be consistently achieved without wearers folding back the flanges on the opposing

end of each earplug.

200.    Defendants misrepresented, through their labeling, advertising, marketing

materials, and/or publications, that the Dual-Ended Earplugs had been tested and found to

constitute safe and effective protection against loud impulse noises using provided standard

instructions for use.

201.    Defendants misrepresented, through their labeling, advertising, marketing materials, and/or publications, that the Dual-Ended Earplugs would not imperceptibly become loose, and thus less effective, or ineffective, subsequent to insertion.

202.    Defendants' false and deceptive advertising practices fraudulently induced consumers into purchasing the Dual-Ended Earplugs.

203.    Because of Defendants' false statements, consumers and end users, including Plaintiff, incurred significant damages including, but not limited to, those alleged throughout this Complaint, which are expressly incorporated herein by reference.

204.    Defendants' intentional acts and omissions constitute a direct and proximate cause of the damages that Plaintiff sustained and seeks to recover.

205.    Plaintiff seeks injunctive relief and actual damages under Minn. Stat. § 8.31, which creates a private right of action when the action would benefit the public. The present action benefits the public in Plaintiff's community, the State of Minnesota, and the United States. In addition to placing thousands of civilians and military servicemembers, including thousands of Minnesotans, at risk of suffering hearing damage and other impairment, Defendants' fraud has led to enormous costs to Minnesotans because of the U.S. military's repeated purchases of the defective earplugs and because of the enormous medical costs associated with treating military servicemembers. Moreover, because the Dual-Ended Earplugs were not recalled and continue to be sold by others, these costs are continuing. Defendants' conduct was directed towards increasing profits at the expense of consumer health and safety, including U.S. military servicemembers. A significant public interest exists in ensuring that Defendants adhere to statutes designed to protect consumers. Plaintiff seeks monetary and injunctive relief to stop further misrepresentations by

Defendants that have caused, and are continuing to cause, significant injuries such as hearing loss and/or tinnitus.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

1.     For an award of monetary damages, including compensatory relief, in an amount exceeding $50,000, the exact amount to be proven at trial;

2.     An award of punitive or exemplary damages in such amount as may be proven at trial;

3.     An award of all applicable statutory penalties and/or other statutory relief as allowed by law;

4.     An award of pre- and post-judgment interest as allowed by law;

5.     An award of costs and disbursements;

6.     An award of reasonable attorneys' fees as allowed by law; and

7.     An award of all such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable under applicable law.

ECKLAND & BLANDO LLP

Dated: January 15, 2021

Jeff H. Eckland (#139920)
Vince C. Reuter (#390874)
Jared M. Reams (#397159)
800 Lumber Exchange Building
10 South Fifth Street
Minneapolis, MN 55402
(612) 236-0160
*Counsel for Plaintiff*

The undersigned acknowledges that sanctions may
be imposed under Minn. Stat. § 549.211

Jeff H. Eckland, Esq.

35